## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.                                                No.    CV 16-0648 MV/GBW
                                                       CR 12-2229 MV

SHANNON D. CONCHO,

      Defendant/Petitioner.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Petitioner's Motion to Vacate and Correct Sentence Pursuant to 28 U.S.C. § 2255 (*doc. 1*).[1]  Having reviewed Petitioner's Motion and the United States' response (*doc. 7*)[2] and being fully advised, I recommend Petitioner's Motion be denied.

### I.    BACKGROUND

Petitioner was charged by a grand jury in a five-count indictment filed on September 5, 2012.  *Cr. doc. 2*.  Although he initially pled not guilty, on February 27, 2014 Petitioner entered a changed plea of guilty to Count 5 of the indictment—Using, Carrying, Possessing and Brandishing a Firearm During and in Relation to and in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)—pursuant to Rule

---

[1] Citations to "*doc.*" refer to docket numbers filed in Case No. 16-CV-648-MV-GBW.  Citations to "*cr. doc.*" refer to the attendant criminal docket, Case No. 12-CR-2229-MV.  For filings made on both dockets, only the civil docket number is given.

[2] Petitioner's reply in support of his Motion was due by June 2, 2017, but none was filed.  Additionally, the United States styled its response as a Motion to Dismiss Petitioner's § 2255 motion.  *See doc. 7*.  If the Court does deny Petitioner's motion as recommended herein, it is also appropriate for the Court to grant the United States' Motion to Dismiss (*doc. 7*).

11(c)(1)(C) of the Federal Rules of Criminal Procedure.[3]  *Cr. docs. 9, 28, 29, 30, 31.*  The plea agreement included a binding stipulation to a term of 84 months of imprisonment and a waiver of collateral attack other than for claims of ineffective assistance of counsel.  *Cr. doc. 30* at 4, 6-7.  Following sentencing, the other four counts of the indictment were dismissed upon motion by the United States, in accordance with the terms of the plea agreement.[4]  *See cr. doc. 30* at 7; *cr. docs. 37, 38.*

At the beginning of the February 27, 2014 change of plea proceeding, Petitioner was placed under oath.  *Cr. doc. 31* at 1.  He stated that he had no illness or condition that impeded his ability to understand the proceedings.  *Id.*  Petitioner stated that he was not under the influence of drugs or alcohol and that he understood the proceedings.  *Id.*  The Court explained to Petitioner all of the terms and conditions of the agreement, including the loss of certain rights and the other consequences of entering into the agreement.  *Id.*  At the conclusion of the proceeding, the Court found that Petitioner fully understood the nature of the charges, that he fully understood the terms of his plea agreement and the consequences stemming therefrom, and that his plea of guilty was freely, voluntarily, and intelligently made.  *Id.*

Prior to sentencing, the United States Probation Office prepared a presentence

---

[3] The other four counts included three counts of Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3), plus one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).  *Cr. doc. 2* at 1-2.

[4] In addition to dismissing Counts 1-4, the United States also agreed not to bring any additional criminal charges against Petitioner arising out of the facts underlying the indictment in exchange for Petitioner's plea of guilty.  *Cr. doc. 30* at 7.

report (PSR) at the request of the parties. *See cr. doc. 33* at 2. As reflected in the PSR, Petitioner's crime of Using, Carrying, Possessing and Brandishing a Firearm During and in Relation to and in Furtherance of a Crime of Violence automatically carried a minimum seven-year (84-month) term of imprisonment pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). PSR ¶ 80; *see also* U.S.S.G. § 2K2.4(b) (2013) (providing that the applicable guideline sentence for a § 924(c) offense is the minimum term of imprisonment required by statute). The PSR explained that had Petitioner been convicted at trial of all five counts of the indictment, rather than pleading guilty to Count 5 in exchange for the dismissal of Counts 1-4, he would have faced a guideline sentencing range of 130-141 months. PSR ¶ 88. Specifically, his total offense level for Counts 1-4 of the indictment would have been 22 combined with a criminal history category of II, resulting in an imprisonment range of 46-57 months, plus the 84 months of imprisonment for Count 5, which must be imposed to run consecutively pursuant to 18 U.S.C. § 924(c)(1)(D)(ii). PSR ¶¶ 87, 88. Therefore, absent the § 924(c) charge, Petitioner would have faced a guideline range of 46-57 months, which would have been further reduced to the range of 33-41 months had he pled guilty to the remaining Counts 1-4 and received an adjustment for acceptance of responsibility.[5] *See cr. doc. 33*

---

[5] In its response to Petitioner's sentencing memorandum, the United States noted that "[a]t the outset of this case, counsel for the parties were concerned that the armed career criminal enhancement may apply to [Petitioner]." *Doc. 33* at 2. This concern precipitated the request for a PSR. *Id.* The armed career criminal enhancement would be triggered in part by a conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), as charged in Count 4 of the indictment. *See cr. doc. 2* at 2; *see also* 18 U.S.C. § 924(e)(1). However, in order for the enhancement to apply, Petitioner must have "three

at 2.  Petitioner did not object to any of the findings in the PSR.  *Cr. doc. 36*.

Petitioner pled guilty to violating the following statute:

[A]ny person who, during and in relation to any crime of violence or drug
trafficking crime (including a crime of violence or drug trafficking crime
that provides for an enhanced punishment if committed by the use of a
deadly or dangerous weapon or device) for which the person may be
prosecuted in a court of the United States, uses or carries a firearm, or
who, in furtherance of any such crime, possesses a firearm, shall, in
addition to the punishment provided for such crime of violence or drug
trafficking crime—

. . .

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of
not less than 7 years[.]

18 U.S.C. § 924(c)(1)(A).

The same statute defines "crime of violence" as:

[A]n offense that is a felony and—

---

previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions
different from one another[.]"  *Id.*  The criminal history section of the requested PSR indicated that
Petitioner only had two countable prior convictions.  *See* PSR ¶¶ 24, 25, 103.  It is possible the parties were
concerned that Petitioner's pending charge of Battery Against a Household Member stemming from a
2012 arrest might constitute a third predicate offense.  PSR ¶ 29.  If the enhancement did apply, Petitioner
would have faced an automatic fifteen-year sentence as a result of being convicted of Count 4.  18 U.S.C.
§ 924(e)(1).  The applicability of the career offender enhancement pursuant to U.S.S.G. § 4B1.1 may have
been another potential concern, as that guideline requires only two predicate "crime of violence"
convictions (along with additional requirements which were met in Petitioner's case).  U.S.S.G. § 4B1.1(a).
However, the United States Probation Office determined that Petitioner's previous offense of felony
involuntary manslaughter—one of the two countable convictions in his criminal history—did not meet
the "crime of violence" definition in U.S.S.G. § 4B1.2.  PSR ¶ 15.  Notably, the PSR also concluded that "an
upward departure may be warranted" pursuant to U.S.S.G. § 4A1.3 because Petitioner had "at least nine
criminal convictions in the Zuni Tribal Court that would have been countable" toward his criminal
history category had he "been afforded an attorney and charged in a local court," as well as "eight prior
tribal arrests for violent behavior."  PSR ¶¶ 102, 103.  Therefore, his criminal history category was found
to be "understated" compared to his criminal record.  PSR ¶ 102.  Nonetheless, the undersigned will
accept as correct Petitioner's assertion—uncontested by the United States—that the applicable guideline
sentencing range would have been 33-41 months absent the  § 924(c) charge in Count 5 and assuming a
plea of guilty to Counts 1-4.  *See doc. 1* at 2-3.

> (A) has as an element the use, attempted use, or threatened use of
> physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force
> against the person or property of another may be used in the
> course of committing the offense.

18 U.S.C. § 924(c)(3).

The "crime of violence" underlying Petitioner's § 924(c) offense was Assault with a Dangerous Weapon in violation of 18 U.S.C. § 1153 and § 113(a)(3), as charged in Counts 1-3 of the indictment. *Cr. doc. 2* at 2-3. In support of his plea of guilty to Count 5, Petitioner specifically admitted to the following facts under penalty of perjury:

> On or about October 2, 2011, in Indian Country, in McKinley County, in
> the District of New Mexico, I, Shannon D. Concho, an Indian, knowingly
> used, carried, and brandished a firearm, a Remington, model 870 Express,
> 12 gauge shotgun, serial number AB164509A, during and in relation to,
> and possessed and brandished said firearm in furtherance of, a crime of
> violence for which I may be prosecuted in a court of the United States, to
> wit: Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113.
> The use of this firearm facilitated my commission of a crime because I
> pointed the firearm at John Doe 1's head and pushed the muzzle of the
> shotgun into the person of John Doe 2, without authorization, with intent
> to commit a felony while armed with a deadly weapon.

*Cr. doc. 30* at 3.

Petitioner's Motion argues that the federal offense of Assault with a Dangerous Weapon under 18 U.S.C. § 113(a)(3) is no longer a crime of violence in light of *United States v. Johnson*, 135 S. Ct. 2551 (2015). *Doc. 1* at 2, 6-8. Therefore, Petitioner argues that if sentenced today, he would not qualify for a conviction pursuant to § 924(c)(1)(A). *Id.* at 3. Petitioner contends that the *Johnson* decision should be applied retroactively to

vacate his conviction of Count 5 of the indictment and to adjust the sentencing guideline range for the remaining 4 counts to 33-41 months. *Id.* at 9. Consequently, Petitioner argues that he is entitled to resentencing as a matter of due process, as it would be a miscarriage of justice to enforce the 84-month prison sentence to which he agreed in light of the significantly lower guideline range that would be otherwise applicable. *Id.* at 8-9.

The United States argues that: (1) *Johnson* does not apply to Petitioner's sentence, and thus Petitioner's motion is time-barred under 28 U.S.C. § 2255(f); (2) Petitioner's waiver of the right to collateral attack in his plea agreement should be enforced to dismiss his motion; and (3) assuming *arguendo* that *Johnson* does apply to render 18 U.S.C. § 924(c)(3)(B) (the "'substantial risk' clause") unconstitutional, the charge of assault with a dangerous weapon underlying Petitioner's conviction remains a "crime of violence" under § 924(c)(3)(A) (the "elements clause"). *Doc. 7* at 3-11.

## II.  TIMELINESS

The United States first argues that Petitioner's motion is time-barred. *Doc. 7* at 3-6. Under 28 U.S.C. § 2255, a prisoner in federal custody may collaterally attack his sentence as unconstitutional or illegal by bringing a motion in the court which imposed the sentence. 28 U.S.C. § 2255(a). However, the statute requires that such a motion be brought within one year of the later of:

(1) the date on which the judgment of conviction becomes final; [or]

. . .

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . .

*Id.* § 2255(f).[6]  Otherwise, it is time-barred and the Court therefore has no jurisdiction to consider it.  *See United States v. Blackwell*, 81 F.3d 945, 947-49 (10th Cir. 1996) (court does not have inherent power to re-sentence defendant but must find that power within a statute).[7]  Petitioner's motion was filed on June 23, 2016, more than a year after his judgment became final, but less than a year after the *Johnson* decision.  *See cr. docs. 39, 41.*  Consequently, for his motion to be timely, Petitioner must show that *Johnson* newly recognized the right he asserts and that such right was made retroactive.  In other words, *Johnson* must have established that Petitioner's mandatory minimum sentence was unconstitutionally fixed at 84 months pursuant to the "substantial risk" clause of the definition of "crime of violence" contained in 18 U.S.C. § 924(c)(3)(B).

In *Johnson*, the Supreme Court held that the residual clause of the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B) – "or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is unconstitutionally vague.  135 S. Ct. at 2563.  Therefore, individuals could not be subject to the ACCA if their underlying prior convictions

---

[6] The statute provides for two other potential time triggers, but they are rarely invoked and not relevant here.  *See* 28 U.S.C. § 2255(f)(2), (f)(4).

[7] While courts do have the power to equitably toll the statutory limitation period of § 2255(f), Petitioner does not seek equitable tolling here, nor does he assert the requisite grounds for granting it.  *See Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008).

qualified as "violent felonies" only under the vague residual clause.  *Id*.  The Supreme Court announced that *Johnson* would apply retroactively on collateral review in *Welch v. United States*, reasoning that *Johnson* announced a substantive new rule.  136 S. Ct. 1257, 1264-65 (2016).

However, Petitioner was not sentenced pursuant to the ACCA.  Rather, as described above, he faced a mandatory minimum of a seven-year prison sentence due to the applicability of 18 U.S.C. § 924(c)(1)(A)(ii) to his offense.  The statute was deemed applicable to his offense on the basis that he had brandished a firearm during and in furtherance of the "crime of violence" of assault with a dangerous weapon.  *See cr. doc. 2* at 2-3; *cr. doc. 30* at 3.  Facing this mandatory minimum, Petitioner stipulated to his sentence of seven years—or 84 months—of incarceration, and that stipulated sentence was thereafter accepted and imposed by the sentencing judge.  *Cr. doc. 30* at 4; *cr. doc. 36*.  Petitioner asserts that *Johnson* nevertheless applies to his sentence because the definition of "crime of violence," as set forth in 18 U.S.C. § 924(c)(3), contains a "substantial risk" clause that is substantially similar to the residual clause in the ACCA.[8]  *Doc. 1* at 4-6; *see* 18 U.S.C. § 924(c)(3)(B); *id.* § 924(e)(2)(B)(ii).  Moreover, Petitioner contends that assault with a dangerous weapon would not otherwise qualify as a crime of violence absent that "substantial risk" clause.  *Doc. 1* at 4-6.  Thus,

---

[8] Specifically, the residual clause of § 924(c)(3) defines "crime of violence" as "an offense that is a felony and . . . that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).  Petitioner asserts that this clause and the residual clause of § 924(e) are "materially indistinguishable."  *Doc. 1* at 4.

Petitioner argues that *Johnson* established the right he now asserts, qualifying his petition as timely under 28 U.S.C. § 2255(f)(3).

Four circuits have held that *Johnson*'s void-for-vagueness holding does not extend to the "substantial risk" clause of 18 U.S.C. § 924(c)(3). *See United States v. Prickett*, 839 F.3d 697, 699 (8th Cir. 2016) (per curiam); *United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016); *United States v. Hill*, 832 F.3d 135, 145-150 (2d Cir. 2016); *Ovalles v. United States*, No. 17-10172, 2017 WL 2829371, at *8-*11 (11th Cir. June 30, 2017). The Seventh Circuit has held to the contrary. *See United States v. Cardena*, 842 F.3d 959, 995-96 (7th Cir. 2016).

While the Tenth Circuit has not addressed this issue, it has held that *Johnson*'s holding extends to the definition of "crime of violence" contained in 18 U.S.C. § 16(b), which contains language identical to the "substantial risk" clause of § 924(c)(3). *See Golicov v. Lynch*, 837 F.3d 1065, 1071-75 (10th Cir. 2016). Four other circuits have reached the same conclusion. *See United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 115 (9th Cir. 2015); *Shuti v. Lynch*, 828 F.3d 440, 441, 445-51 (6th Cir. 2016); *Baptiste v. Attorney Gen.*, 842 F.3d 601, 615-21 (3d Cir. 2016); *but see United States v. Gonzalez-Longoria*, 813 F.3d 670, 672-78 (5th Cir. 2016) (*en banc*) (holding that the text of the "crime of violence" definition in § 16(b) is textually distinct from the ACCA residual clause and is thus not unconstitutionally vague).[9] At first

---

[9] Though this issue is resolved for the time being in this circuit, the Supreme Court recently granted

glance, therefore, one might assume that *Golicov* dictates a similar result in the context of § 924(c)(3). Such an assumption would be perilous.

As cited above, the Sixth Circuit has held that the residual clause of 18 U.S.C. § 16(b) is unconstitutionally vague pursuant to *Johnson* yet concluded in another case that the identical language of the "substantial risk" clause in § 924(c)(3) is not. *Shuti*, 828 F.3d at 445-51; *Taylor*, 814 F.3d at 375-76. The *Shuti* court distinguished § 924(c)(3)—the statute at issue in *Taylor* and here—from § 16(b) on the basis that only the latter requires the categorical approach in evaluating whether a given crime "by its nature[] involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Shuti*, 828 F.3d at 446. Thus, much like the ACCA, a faithful application of § 16(b) requires an elements-based evaluation of the "risk" involved in the "idealized ordinary case" of a given offense, rather than the risk involved in the instant offense. *Johnson*, 135 S. Ct. at 2561. In contrast, an offense qualifying as a crime of violence under § 924(c) is always the instant offense—in other words, "creation of risk is an element of the crime." *Shuti*, 828 F.3d at 449 (quoting *Johnson*, 135 S. Ct. at 2557).

The Sixth Circuit explained that this distinction "makes all the difference[,]" because "[u]nlike the ACCA . . . which require[s] a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate

certiorari to resolve the present circuit split over the constitutionality of 18 U.S.C. § 16(b) in *Lynch v. Dimaya* (S. Ct. No. 15-1498). However, regardless of the future holding in *Dimaya*, Petitioner's § 924(c) case presents a different issue requiring an independent analysis.

determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding."

*Id*. Moreover, in real-world applications of § 924(c), courts "have often applied the

substantial risk element to the actual conduct in the present case." *Id.* at 449-50 (internal

quotations and alterations omitted); *see also United States v. Ramos*, 537 F.3d 439, 457 (5th

Cir. 2008) (discussing the actual conduct underlying the § 924(c)(1)(A) convictions of

two defendant police officers and explaining that the case-specific facts establishing the

elements of the offense "were decided by the jury based upon credibility

determinations that we, as an appellate court, may not disturb"). Similarly, in holding

that the residual clause of 18 U.S.C. § 16(b) is unconstitutionally vague pursuant to

*Johnson*, the Third Circuit also noted the import of the distinction between "crime of

violence" definitions requiring the categorical approach versus those that apply to real-

world conduct in *Baptiste*:

> Seemingly lost in these nuanced arguments about the scope and import of
> *Johnson* is the fact that the Supreme Court expressly anticipated the effect
> its holding would have on statutes with the language contained in § 16(b).
> In addressing the applicability of its holding to those statutes, the Court
> stated: "As a general matter, we do not doubt the constitutionality of laws
> that call for the application of a qualitative standard such as 'substantial
> risk' *to real-world conduct*." *Johnson*, 135 S. Ct. at 2561 (emphasis added);
> *see Welch*, 136 S. Ct. at 1262. Section 16(b) is not such a law. Rather, § 16(b)
> calls for the exact analysis that the Court implied was unconstitutionally
> vague—the application of the "substantial risk" inquiry to the "*idealized
> ordinary case*" of a crime. *Johnson*, 135 S. Ct. at 2561 (emphasis added).
> Thus, because the two inquiries under the residual clause that the
> Supreme Court found to be indeterminate—the ordinary case inquiry and
> the serious potential risk inquiry—are materially the same as the inquiries
> under § 16(b), § 16(b) is unconstitutionally vague.

841 F.3d at 620-21.

I am persuaded that the Tenth Circuit's holding in *Golicov* regarding the constitutionality of § 16(b) is not controlling regarding the "substantial risk" clause of § 924(c)(3)(B) given that there is no "ordinary case inquiry" involved in a § 924(c) analysis. Moreover, I find persuasive the analyses conducted by Second, Sixth, Eighth and Eleventh Circuit Courts of Appeals, which have held that the "substantial risk" clause of § 924(c)(3)(B) is not unconstitutionally vague under *Johnson*.

However, I recommend that the Court assume without deciding that *Johnson* announced the newly recognized right that Petitioner now asserts and that his petition is therefore timely under 28 U.S.C. § 2255(f)(3). Several considerations inform this recommendation. First, it is likely that a future hypothetical Supreme Court case will resolve the present circuit split regarding *Johnson*'s applicability to the "substantial risk" clause of 18 U.S.C. § 924(c)(3)(B). Assuming *arguendo* that the Supreme Court holds that the § 924(c)(3) "substantial risk" clause is unconstitutionally vague pursuant to *Johnson*, such a holding would likely be considered "merely an application of the principle that governed a prior decision to a different set of facts," which does not constitute a "new rule" or "newly" "recognized right" so as to trigger a new one-year statutory limitation period under § 2255(f)(3).[10] *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013).

---

[10] In the analysis of habeas petitions and the potential retroactivity of "new" rulings to such petitions, various similar, but different, terms are used to describe the right or rule upon which a request for relief is based. In 28 U.S.C. § 2255(f)(3), the term "newly recognized" "right" is used. In 28 U.S.C. § 2255(h)(2), the term "new rule of constitutional law" is used. In *Teague v. Lane*, 489 U.S. 288, 309-13 (1989), the

Therefore, the right asserted by Petitioner here has been timely brought within one year of the precedential decision that would dictate any future holding that § 924(c)(3) is similarly unconstitutional.

Second, the Court need not directly decide this question, as I recommend dismissing Petitioner's motion on the alternative grounds that Petitioner's offense of assault with a dangerous weapon is a "crime of violence" under the elements clause of § 924(c)(3), even assuming that the "substantial risk" clause of that statutory provision is unconstitutional. Thus, even assuming that *Johnson* dictates a finding that the "substantial risk" clause of § 924(c)(3) is unconstitutionally vague, Petitioner is not entitled to resentencing.

## III.    WAIVER OF COLLATERAL REVIEW

As noted above, Petitioner waived his right to bring a collateral attack, such as

---

Supreme Court uses the terms "new constitutional rules of criminal procedure" and "new substantive rules." To the extent that they have addressed the significance of these distinctions, courts have concluded that they should be interpreted as having the same functional meaning. *See, e.g., Headbird v. United States*, No. 15-1468, 2016 WL 682984 (8th Cir. Feb. 19, 2016) (directly discussing the difference in language and collecting cases in support of equating the "newly recognized right" inquiry with the "new rule" inquiry of *Teague*); *see also United States v. Swinton*, 333 F.3d 481, 485 (3d Cir. 2003) (recognizing that "the language is somewhat different" between subsections (h)(2) and (f)(3) of § 2255  but applying its own precedent regarding a "new rule" in the (h)(2) context as controlling on the "new right" question in the (f)(3) context); *see also United States v. Cuong Gia Le*, 206 F. Supp. 3d 1134, 1143-44 (E.D. Va. 2016). Other courts which have not explicitly noted the difference have simply used the terms interchangeably in their analyses. *See Butterworth v. United States*, 775 F.3d 459, 464–65 (1st Cir. 2015), cert. denied, 135 S. Ct. 1517 (2015); *Figuereo-Sanchez v. United States*, 678 F.3d 1203, 1207–08 (11th Cir. 2012); *United States v. Mathur*, 685 F.3d 396, 398 (4th Cir. 2012); *Peterson v. Cain*, 302 F.3d 508, 510–11 (5th Cir. 2002) (discussing the statutory limitation period of 28 U.S.C. § 2244(d)(1)(C) requiring a "constitutional right . . . newly recognized by the Supreme Court"—also enacted as part of AEDPA—by reference to the pre-existing "new rule" Teague jurisprudence). Therefore, notwithstanding the slight differences between these terms, the undersigned concludes that the Teague "new rule" jurisprudence informs the question of what constitutes a newly recognized right under 28 U.S.C. § 2255(f)(3).

the instant motion, in his plea agreement. *Cr. doc. 30* at 6-7. In its Motion to Dismiss, the United States moves to enforce that waiver here and asks the Court to deny Petitioner's Motion without reaching the merits. *Doc. 7* at 6-8. A "waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). However, "the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights." *Id*. Therefore, in reviewing whether to enforce the waiver of appellate or collateral attack rights, the Court must determine: (1) whether the disputed appeal falls within the scope of the waiver of appellate [or collateral attack] rights; (2) whether the defendant knowingly and voluntarily waived his appellate [or collateral attack] rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325-1327 (10th Cir. 2004). Petitioner does not dispute that his Motion falls within the collateral attack waiver in his plea agreement. *See doc. 1* at 8-9. Nor does he argue that he did not knowingly and voluntarily waive his collateral attack rights. *Id.* He only contends that enforcing the waiver would result in a miscarriage of justice. *Id.*

The Tenth Circuit Court of Appeals has held "that enforcement of [such a] waiver does not result in a miscarriage of justice unless enforcement would result in one of . . . four situations. . . ." *Hahn*, 359 F.3d at 1327. Those situations are: "[1] where

the district court relied on an impermissible factor such as race[;] [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid[;] [3] where the sentence exceeds the statutory maximum[;] or [4] where the waiver is otherwise unlawful." *Id*. (quoting *United States v. Elliott*, 264 F.3d 1171, 1173 (10th Cir. 2001)).

Petitioner argues that the third *Elliott* exception applies because although his sentence does not exceed the statutory maximum, "it was a dramatic increase over the otherwise applicable guideline range[,]" which he contends amounts to a miscarriage of justice. *Doc. 1* at 9. However, Petitioner pled guilty to only one crime – brandishing a firearm in violation of 18 U.S.C. § 924(c)(1)(A). Under his argument, he was not guilty of that crime. Therefore, one could argue that any sentence for that crime exceeded the statutory maximum to which he could be sentenced. Consequently, Petitioner's waiver could not be enforced under *Hahn* if the Court accepted the merits of his position that he was not guilty of the crime of conviction. Because Petitioner does not clearly make this argument and because I conclude that Petitioner's Motion should be denied on the merits, I recommend that the Court not enforce the waiver of collateral attack rights.

## IV. ASSAULT WITH A DANGEROUS WEAPON IS A "CRIME OF VIOLENCE" UNDER THE ELEMENTS CLAUSE OF THE STATUTORY DEFINITION

I recommend denying Petitioner's Motion because his conviction for assault with a dangerous weapon remains a crime of violence under the elements clause (18 U.S.C. § 924(c)(3)(A)), even assuming the unconstitutionality of the "substantial risk" clause

(*id.* § 924(c)(3)(B)).  As discussed above, the elements clause contained in § 924(c) defines as a "crime of violence" any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  The Supreme Court explained in *Johnson v. United States*, 559 U.S. 133, 140 (2010)[11]  that the term "physical force" as used in the ACCA "means *violent* force—that is, force capable of causing physical pain or injury to another person."  Nonetheless, the force required to satisfy that element need not be sufficient to cause serious injury—it "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example."  *Id.* at 1272.  Therefore, in evaluating whether Petitioner's conviction of assault with a dangerous weapon constitutes a crime of violence under the elements clause of § 924(c)(3), the Court must first consider whether the statute defining that offense necessarily proscribes conduct that "has as an element the use, attempted use, or threatened use of" violent force against the person of another.  If so, it is a crime of violence under § 924(c)(3) notwithstanding the "substantial risk" clause.

Petitioner's conviction stemmed from a violation of the following statute regarding assaults within maritime and territorial jurisdiction, as his crime occurred in Indian Country:

---

[11] To avoid confusion, this case will be referred to as *Johnson I* to distinguish it from the 2015 *Johnson* opinion striking down the residual clause of the ACCA (hereinafter referred to as *Johnson II*).

(a) Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

. . .

(3) Assault with a dangerous weapon, with intent to do bodily harm, by a fine under this title or imprisonment for not more than ten years, or both.

18 U.S.C. § 113(a)(3); *see also id*. § 1153(a) ("Any Indian who commits against the person or property of another Indian or other person . . . a felony assault under section 113 . . . within the Indian country, shall be subject to the same law and penalties as all other persons committing [the same offense], within the exclusive jurisdiction of the United States.").

A dangerous weapon is defined as "anything capable of being readily operated or wielded by one person to inflict severe bodily harm or injury upon another person." TENTH CIRCUIT COURT OF APPEALS CRIMINAL PATTERN JURY INSTRUCTION 2.09 (2011). While Congress does not define the term "assault" in the statute, the Tenth Circuit has "presumed that [Congress] intended to embrace the common law meaning" of assault. *Brundage v. United States*, 365 F.2d 616, 619 (10th Cir. 1966). The *Brundage* court held that a trial court's jury instructions on the § 113(a)(3) offense of assault with a dangerous weapon were "in complete conformity with the applicable law" where the instructions: (1) defined assault as "an attempt coupled with the present ability to commit a violent injury upon the person of another"; (2) explained that assault "does not require that there shall have been a completed act, [as] the attempt alone is sufficient to constitute an

17

assault, provided that it is in such close proximity with the person that it can be said that it is committed in a manner whereby there is an apparent present ability to carry out the attempt"; and (3) stated "that specific intent was an essential ingredient of the offense and that [t]his means that the act was committed knowingly, that is[,] with knowledge as to what the defendant was doing and with the desire or wish to bring about a serious bodily injury to the person of the other."  *Id.* (internal quotations omitted).

While there is no Tenth Circuit pattern jury instruction on this specific statutory offense, the Committee Commentary on the pattern jury instructions for 18 U.S.C. § 111—the statute criminalizing "assaulting, resisting, or impeding certain officers or employees"—cites *United States v. Bruce*, 458 F.3d 1157, 1165 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 999 (2007), as the instructive case regarding "how the various subsections of the statute, § 113(a)(1) to (a)(7), relate in terms of lesser-included offenses."  TENTH CIRCUIT COURT OF APPEALS CRIMINAL PATTERN JURY INSTRUCTION 2.09 cmt. (2011).  In *Bruce*, the Tenth Circuit explained that "[t]he elements differentiating assault with a dangerous weapon from simple assault are the use of a deadly weapon and the intent to commit bodily harm."  458 F.3d at 1165 n.4.  In order to obtain a conviction under § 113(a)(3), a jury must find beyond a reasonable doubt that a defendant committed the assault "intentionally, with a dangerous weapon, and with a desire to do bodily harm."  *United States v. Tsosie*, 288 F. App'x 496, 501 (10th Cir. 2008) (unpublished); *see also*

18

Ninth Circuit Court of Appeals Model Criminal Jury Instruction 8.7 (2010)

(explaining that the elements of the crime of assault with a dangerous weapon are:

(1) the defendant assaulted the victim by intentionally striking or wounding the victim,

or using a display of force that reasonably caused the victim to fear immediate harm;

(2) the defendant acted with the intent to do bodily harm to the victim; (3) the

defendant used a dangerous weapon; and (4) the assault took place on a place of federal

jurisdiction).

The Tenth Circuit has addressed a closely related question to the one before the

Court now in two cases.  *See United States v. Ramon Silva*, 608 F.3d 663 (10th Cir. 2010);

*United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016).  In *Ramon Silva*, the

court held that "apprehension causing" aggravated assault under New Mexico law

qualifies as a violent felony under the ACCA elements clause, which is, as relevant here,

identical to the elements clause in § 924(c).[12]  608 F.3d at 670-71.  In reaching that

conclusion, the court first explained that the crime "requires proof that a defendant

purposefully threatened or engaged in menacing conduct toward a victim, with a

weapon 'capable of producing death or great bodily harm[.]'"  *Id.* at 670.  The court held

that these requirements together qualified the offense as a violent felony under the

elements clause because "[t]hreatening or engaging in menacing conduct toward a

---

[12] The only difference between the two clauses is that the elements clause of 18 U.S.C. § 924(c)(3) includes offenses involving force against either the person or property of another, while the elements clause of U.S.S.G. § 2L1.2 limits qualifying offenses to those that involve force against the person of another only. As Petitioner's underlying offense of assault with a dangerous weapon requires "intent to do bodily harm," the distinction between the two clauses is not pertinent to this case.  18 U.S.C. § 113(a)(3).

victim, with a weapon capable of producing great bodily harm, threatens the use of 'violent force' because by committing such an act, the aggressor communicates to his victim that he will potentially use 'violent force' against the victim in the near future." *Id.* Similarly, as explained above, assault with a dangerous weapon under federal law requires both intentional use of a weapon that is "capable of being readily operated . . . to inflict severe bodily harm or injury upon another person" as well as intent to commit bodily harm. Therefore, it qualifies as a crime of violence under the elements clause of § 924(c)(3) for the same reasons.

This conclusion is further bolstered by the Tenth Circuit's later holding in *Maldonado-Palma*. There, the court concluded that any form of aggravated assault with a deadly weapon in New Mexico—not just the "apprehension causing" form discussed in *Ramon Silva*—was a crime of violence under the elements clause of U.S.S.G. § 2L1.2, which is identical to the elements clause of the ACCA.[13] Specifically, the defendant in *Maldonado-Palma* argued that "assaulting someone by using insulting language while possessing a deadly weapon would qualify as aggravated assault [in New Mexico] . . . but that it does not [satisfy the elements clause of § 2L1.2]." 839 F. 3d at 1249. The court rejected the defendant's argument, explaining that even the "insulting language" form of aggravated assault requires the *use* of a deadly weapon; mere possession of such a weapon does not suffice. *Id.* at 1249-50. Therefore, the court reasoned that a defendant

---

[13] *See supra* note 12.

must somehow "employ the deadly weapon in committing the assault" and held that

"[e]mploying a weapon that is capable of producing death or great bodily harm or

inflicting dangerous wounds in an assault necessarily threatens the use of physical

force" under the *Johnson I* standard.  *Id.* at 1250.

There can be no doubt that assault with a dangerous weapon under 18 U.S.C.

§ 113 requires the use, rather than mere possession, of a firearm.  *See United States v.*

*Johnson*, 967 F.2d 1431, 1436 (10th Cir. 1992), *abrogated on other grounds by Lewis v. United*

*States*, 523 U.S. 155, 162-65 (1998) (elements of crime include "use of a deadly weapon

and the intent to commit bodily harm").  Indeed, the Tenth Circuit has expressly held

that aggravated assault under N.M. Stat. Ann. § 30–3–2(A) – the precise crime at issue in

*Maldonado-Palma* – requires proof of all of the elements of assault with a dangerous

weapon under 18 U.S.C. § 113 and has no elements not included in the federal crime.[14]

*Id*. at 1433-36; *see also United States v. Abeyta*, 27 F.3d 470, 473-74 (10th Cir. 1994).  The

Tenth Circuit explained that the only distinction between the two statutes is that the

New Mexico version, unlike the federal statute, does not require any showing that the

defendant specifically intended to inflict bodily harm on his victim.  *Johnson*, 967 F.2d at

1433.  As the Tenth Circuit has determined that the lesser version of the crime under

New Mexico law satisfies the *Johnson I* standard for a crime of violence, it inexorably

---

[14] *Johnson* dealt with 18 U.S.C. § 113(c), which was the former statutory cite for the federal offense of assault with a dangerous weapon now found at 18 U.S.C. § 113(a)(3).  *See United States v. Duran*, 127 F.3d 911, 915 (10th Cir. 1997).

follows that the more serious version under federal law does as well.[15]

Because Tenth Circuit precedent forecloses Petitioner's argument that assault with a dangerous weapon under 18 U.S.C. § 113 is not a crime of violence after *Johnson I*, his claim fails. Nonetheless, I will address one remaining argument from Petitioner. He argues that assault with a dangerous weapon does not qualify as a crime of violence under the elements clause because it "does not have a requirement of violent force." Specifically, Petitioner argues that the elements of assault with a dangerous weapon would be satisfied if a defendant "mail[ed] a package containing anthrax to the mailroom of a large office . . . [or] delivered polonium-210 via a cup of tea . . . ." *Doc. 1* at 7-8. While Petitioner acknowledges that said cup of tea "is certainly a dangerous weapon," he argues that "its being brewed, poured, and sipped falls short of the type of activity associated with 'violen[t] force[.]'" *Id.*

Petitioner's arguments in this regard are likely foreclosed by the Supreme Court's decision in *United States v. Castleman*, 134 S. Ct. 1405 (2014). The defendant in *Castleman* posed a similar argument that, while he committed a crime that required him

---

[15] In fact, the logic is even more compelling here where Petitioner was convicted of committing his crime of violence by brandishing the relevant firearm. For purposes of § 924(c), to "brandish" a firearm means to "display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4). Thus, in order to "brandish" a firearm a defendant must (1) display the firearm or make the presence of the firearm known to another (2) in order to intimidate that individual. *See United States v. Bowen*, 527 F.3d 1065, 1073 (10th Cir. 2008) (citing *United States v. Beaudion*, 416 F.3d 965, 968 (9th Cir. 2005)). "As § 924(c)'s statutory scheme makes clear, Congress simply viewed 'brandishing' a firearm as a more egregious form of 'using' such a weapon. Accordingly, § 924(c) 'creates a tiered framework' in which the two most serious 'uses' of a firearm—brandishing and discharge—result in longer terms of imprisonment." *Id.* at 1073-74 (citations omitted).

to have "intentionally or knowingly cause[d] bodily injury to" the victim, such a crime did not have as an element the use of physical force because "one can cause bodily injury without violent contact—for example, by deceiving the victim into drinking a poisoned beverage."  134 S. Ct. at 1409 (internal quotations omitted).  However, the Supreme Court found that such conduct does in fact entail the use of force:

> [A]s we explained in *Johnson [I]*, "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force."  And the common-law concept of "force" encompasses even its indirect application . . . .  [T]he knowing or intentional application of force is a "use" of force.  [The defendant] is correct that under *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377, 160 L.Ed.2d 271 (2004), the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument."  But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry . . .[,] no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink."  The "use of force" in [the defendant's] example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm.  That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.  Under [the defendant's] logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Id.* at 1414–15 (internal citations to defendant's briefing omitted).

*Castleman* dealt with the force required under the definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 922(g)(9), which the Court held to be a lesser amount of force than that required under the *Johnson I* standard.  *See id.* at 1409-13.  However, the reasoning cited above still applies in considering whether Petitioner's federal offense of assault with a dangerous weapon requires the use of violent force.  As

the Fourth Circuit has explained, "the [*Castleman*] Court relied significantly on *Johnson*

in rejecting a proffered limitation on the term 'physical force.'"  *United States v. Reid*, __

F.3d __, 2017 WL 2782624, *4 (4th Cir. June 28, 2017) (quoting *Castleman*, 134 S. Ct. at

1414 ("[A]s we explained in Johnson, 'physical force' is simply 'force exerted by and

though concrete bodies' "); *cf. id*. at 1416–17 (Scalia, J., concurring in part and concurring

in the judgment) ("[I]t is impossible to cause bodily injury without using force 'capable

of' producing that result")).  Just as the Fourth Circuit did with respect to the ACCA,

"by applying the combination of *Johnson* and *Castleman*, [I] conclude that [§ 924(c)'s]

phrase 'use of physical force' includes force applied directly or indirectly."  *Id*.

Therefore, Petitioner's argument must fail.

## V.    CONCLUSION

The offense of assault with a dangerous weapon in violation of 18 U.S.C. §

113(a)(3) remains a "crime of violence" under *id*. § 924(c)(3) even without the

"substantial risk" clause.  As such, even after *Johnson II*, Petitioner was rightly charged

with and convicted of the offense of using a firearm during and in relation to a crime of

violence under § 924(c)(1)(A)(ii) due to his brandishing of a firearm in furtherance of the

offense of assault with a dangerous weapon.  Therefore, I recommend denying

Petitioner's motion on that ground.

GREGORY B. WORMUTH
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**